UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHARLES R. CANTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-127 CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On March 14, 2008, Plaintiff, Charles R. Cantrell ("Cantrell"), filed his complaint in this Court. On July 29, 2008, Cantrell filed an opening brief and he asks this Court to enter judgment in his favor or to remand this matter to the Commissioner. On October 9, 2008, Defendant, Social Security Administration ("SSA"), filed its response brief. On October 28, 2008, Cantrell filed his reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record and the briefs of the parties.

**I.  PROCEDURE**

On July 16, 2003, Cantrell filed his application for a period of disability and disability insurance benefits, alleging disability beginning March 1, 2001. (Tr. 15). Cantrell is insured for disability insurance benefits through June 30, 2009. (Tr. 17). Cantrell claims he is, or was, disabled under the Social Security Act. See 42 U.S.C. §§ 216(i), 223(d).

On October 14, 2005, Cantrell appeared at a hearing before an Administrative Law Judge ("ALJ") who issued a denial of Cantrell's claim. (Tr. 15-21). The ALJ found that Cantrell had not been under a disability. (Tr. 21). In reaching this conclusion the ALJ determined that Cantrell met

the insured status requirements of the SSA through June, 30, 2009 and that it was not clear whether Cantrell had engaged in substantial gainful activity since March 1, 2001. (Tr. 17). The ALJ also determined that Cantrell had severe impairments consisting of: bilateral hip replacements, high blood pressure and Hepatitis C, but that he did not have a severe mental impairment, nor were his impairments among those listed in the C.F.R. (Tr. 18). The ALJ determined that Cantrell had the residual functional capacity to perform sedentary work, but that he was unable to perform any past relevant work. (Tr. 18, 20). The ALJ also determined that, due to Cantrell's age, transferability of job skills was not material to the determination of disability, that there were jobs existing in significant number in the national economy that Cantrell could perform and that Cantrell had not been under a disability as defined in the SSA. (Tr. 20-21).

Cantrell appealed the ALJ's decision to the Appeals Council. (Tr. 7). The Appeals Council denied review and, as a result, the ALJ's decision became the Commissioner's final decision. (Tr. 4-7). 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on March 14, 2008, Cantrell filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.   ANALYSIS**

    A.    Facts

Cantrell was 48 years old at the time of the hearing, is married and is a high school graduate. (Tr. 52, 68, 74). His past relevant work included mostly manual labor consisting of at least medium level work in nature. (Tr. 64-84). He did not perform SGA between March 2001 and October 2004

2

(Tr. 53); and he lost his health insurance in 2003 (Tr. 88), though he did receive some insurance and unemployment money (Tr. 266).

Cantrell has a history of hypertension, smoking, Hepatitis C, Avascular necrosis of both hips, left index finger repair, a laminectomy due to a herniated disc and a leg fracture following a motor vehicle accident. (Tr. 97-187, 222, 232). From January through August of 2002 he was seen by Dr. Chester Rogers for refills of various medications, including Darvocet, Zoloft, Vioxx and Cozaar. (Tr. 190-95). Due to asthma complications he was admitted to the hospital for a three day stay in August of 2002. (Tr. 95-96).

On August 11, 2003, Cantrell had a consultative examination with Dr. Barbour who found him to have chronic lower back pain, degenerative disk disease, hip trouble, knee pain due to joint disease, Hepatitis C with flu-like symptoms, abdominal tenderness and elevated blood pressure. (Tr. 212). Dr. Barbour also noted that Cantrell had difficulty getting on and off the examination table, poor walking abilities, inability to hop or squat and decreased flexion and extension of the lumbar spine. (Tr. 212-213).

On August 25, 2003, a State Agency doctor, Dr. Wenzler, performed an RFC evaluation of Cantrell, specifically listing his inability to stoop as "occasional." (Tr. 214-221). This assessment was affirmed by a subsequent doctor, Dr. Bastnagel, on January 8, 2004. (Tr. 221).

From August through November 2004, Cantrell visited St. Joseph Health Center to have prescriptions filled. (Tr. 223-224). Records indicate that Cantrell seemed "mildly depressed," but was otherwise in good spirits. (Tr. 18).

B.     Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

C.     Cantrell's Motion for Summary Judgment or Remand

To be entitled to benefits under the Social Security Act, Cantrell must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any

other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R.§§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but he burden shifts to the Commissioner at step five. Id.

1. The ALJ Made a Complete RFC Finding.

Cantrell contends that, in arriving at his RFC finding, the ALJ failed to include all of the findings of the State Agency doctor and that the ALJ mischaracterized some of the evidence. However, after a careful review of the record and relevant legal authority, this Court does not agree.

First, Cantrell submits that Dr. Barbour, the consultative examination doctor, noted Cantrell to be unable to stoop. Cantrell argues, however, that the State Agency doctor "erroneously translated [that finding] into the ability to occasionally stoop." Doc. No. 18 at 6. This is an inaccurate recitation of the record. While it is true that the State Agency doctor characterized the frequency with which Cantrell was able to stoop as "occasionally," a thorough examination of Dr. Barbour's report reveals that Cantrell's inability to stoop was not mentioned. (Tr. 211-213). Instead, Dr.

5

Barbour referred to Cantrell's limitation as being "unable to hop or squat." (Tr. 212). "Stooping" and "squatting" are not synonymous. See Lawrence v. Astrue, 2008 WL 3200747, *7 (W.D. Wis. 2008) (equating "stooping" with the act of bending, while equating "squatting" with the act of crouching).

The ALJ relied upon the State Agency doctor's report in concluding that Cantrell could occasionally stoop. (Tr. 20). This finding was not contrary to the assertions found in Dr. Barbour's report. (Tr. 211-213). Cantrell's argument that, under SSR 96-9p, "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply," is thus not applicable. Further, Cantrell neglected to include the rest of the regulation's language, which is indeed consistent with the ALJ's ultimate finding. It states that "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." The ALJ's finding was supported by substantial evidence and was not in error.

Cantrell further argues that the ALJ erred in relying on the State Agency doctor's opinion because the ALJ failed to include all of the Dr. Barbour's findings in the RFC. To support his position, Cantrell relies on the proposition that an "ALJ may reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." See Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003); Oakes v, Astrue, 2007 U.S. App. LEXIS 29900 (7th Cir. 2007). However, in his statement of the law, Cantrell fails to include the rest of the court's ruling, which concludes, "to provide the evidence necessary to reject a *treating physician's* opinion." Oakes, 2007 U.S. App. LEXIS 29900 at 18 (emphasis added). In the immediate case, Dr. Barbour's report did not involve

the opinion of Cantrell's treating physician; in fact, the evidence does not show that Cantrell had a treating physician at all. As such, Oakes is not useful for advancing Cantrell's argument.

Next, Cantrell argues that, under 20 C.F.R. § 404.1519n, the ALJ should have developed the evidence further by obtaining a Medical Source Statement ("MSS"), noting that regulation's language that the SSA "will ordinarily request, as part of the consultative examination process, a[n] [MSS] about what you can still do despite your impairment[s]." However, this too is an incomplete statement of law by Cantrell. Instead, the regulation goes on to state that "the absence of such a statement in a consultative examination report *will not make the report incomplete*." 20 C.F.R. § 404.1519n (emphasis added). See also Eaton v. Astrue, 2008 WL 2477580, at 7 n.5 (N.D. Ind. 2008) (holding that, under 20 C.F.R. § 404.1519n, an ALJ has "discretion to seek an RFC or MSS"). Indeed, an ALJ is only required to request an MSS when the information already in the record is inadequate to make a determination of disability. See Skinner v. Astrue, 478 F.3d 836, 843 (7th Cir. 2007). In the immediate case, the ALJ based his decision on the findings of Drs. Barbour, Wenzler and Bastnagel, as well as progress notes from both Dr. Rogers and the St. Joseph Health Center, thus indicating that the information contained in the record was adequate. (Tr. 19-20). In addition, Cantrell fails to explain why the record was inadequate. It is the claimant's burden to prove that he is disabled. See 42 U.S.C. § 423(d)(5); See also Brewer v. Charter, 103 F.3d 1384, 1391 (7th Cir. 1997) (holding that a claimant bears the burden of establishing a disability). Accordingly, this Court finds that the ALJ properly exercised his discretion in not obtaining an MMS.

Cantrell also argues that the ALJ should have ordered a consultative mental examination. 20 C.F.R. § 404.1519a(b) states that an ALJ may order a consultative examination where "the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on [a]

7

claim." 20 C.F.R. § 404.1519a(b). See also Barnett v. Barnhart, 381 F.3d 664,669 (7th Cir. 2004) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable."). However, in the immediate case, the ALJ noted numerous pieces of evidence to support his determination that Cantrell was not mentally impaired. Such evidence included Cantrell's lack of mental health treatment, the lack of corroborative evidence that would support Cantrell's mental impairment claim, and other evidence from doctors listing Cantrell as being only "mildly depressed." See (Tr. 18-19). Plaintiff has failed to articulate what evidence would support his claim of mental impairment. Brewer, 103 F.3d at 1391 (A claimant bears the burden of establishing a disability.). As such, the ALJ concluded that there was sufficient medical evidence to make his determination, therefore, he was under no duty to order a consultative medical examination.

Finally, Cantrell argues that the ALJ failed to perform a function-by-function analysis of the claimant's ability to perform work-related activities, as required by SSR 96-8p. Specifically, Cantrell maintains that SSR 96-8p requires, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p. The SSA responds that the ALJ's opinion met the "Narrative Discussion Requirements" of SSR 96-8p, and that the ALJ did not fail to identify Cantrell's abilities on a function-by-function basis.

Indeed, 96-8p does not mandate a function-by-function articulation requirement. Instead, the ALJ is only required to "*consider*, not articulate" a claimant's RFC in a function-by-function basis. See Corder v. Barnhart, 2004 WL 1381125, 6 (N.D. Ill. 2004) (emphasis added) (finding that SSR 96-8p does not require the Commissioner to articulate in detail the claimant's ability to sit,

stand or walk for long periods of time). In contrast, a function-by-function analysis requires that "each function must be considered separately (e.g. the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours)." SSR 96-8p. Here, the ALJ described Cantrell's capacity, in part, as "able to sit for a total of six hours and stand/walk for a total of at least two but less than six hours." (Tr. 20). It is therefore clear that the ALJ did indeed consider Cantrell's RFC.

Also, the ALJ's conclusion must contain a narrative discussion which contains evidence support[ing] each conclusion, citing specific medical facts . . . and non-medical evidence. See SSR 96-8p. Here, the ALJ discussed in detail the objective medical evidence, medical source opinions of record, and other medical evidence, including Cantrell's treatment methods, use of medication, and precipitating and aggravating factors; thus fulfilling the narrative discussion requirements.. See Tr. 19-20. Compare Knox v. Astrue, 527 F.Supp.2d 926, 939 (N.D. Ill. 2008) (concluding that RFC determination was proper where ALJ discussed objective medical evidence, claimant's symptoms, medical source opinions and other evidence).

Accordingly, this Court concludes that the ALJ's consideration of Cantrell's RFC, and his articulation consisting of a function-by-function analysis and a narrative discussion of Cantrell's RFC, were sufficient. Zurwaski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (The ALJ must build a logical and accurate bridge from the evidence to his conclusion.).

2. The ALJ's Credibility Finding Was Proper.

Cantrell next argues that the ALJ's credibility finding was improper because the ALJ only relied upon objective evidence and improperly held Cantrell's attempts to work against him.

Normally, an ALJ's credibility determination will be given deference and will not be disturbed unless patently wrong. Herron v. Shalala, 19 F.3d 329, 335 (7th Cir.1994). Though, courts have greater freedom to review the ALJ's decision when the determination rests on "objective factors" rather than "subjective considerations." Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004). Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008). An ALJ may properly rely on objective medical and other evidence where it "sufficiently contradict[s]" the credibility of [a claimant's] claims of disability." Arnold v. Barnhart, 473 F.3d 816, 823 (7th Cir. 2007). "Statements by the claimant as to the nature and extent of an impairment are insufficient to establish its existence. This must be done by acceptable medical evidence." Garcia v. Califano, 463 F. Supp. 1098, 1106 (N.D. Ill. 1979).

In finding that Cantrell was not credible, with regard to his alleged mental impairment, the ALJ compared Cantrell's statement that he suffered from depression with other evidence in the record. Such evidence indicated that, though Cantrell claimed he was "mildly depressed," Cantrell had been observed as "alert," "cooperative," "pleasant," "appropriate," and "exhibiting a normal affect." (Tr. 18). Further, the ALJ noted that there was "no medical opinion of record regarding [Cantrell's] mental condition." In addition, the ALJ bolstered his conclusion by noting that Cantrell had not "been hospitalized for a psychiatric condition since his alleged onset date." (Tr. 18). As such, the ALJ reasonably concluded that Cantrell was "only mildly limited by his mental impairment." (Tr. 18).

In addition, the ALJ supported his reliance on the opinion of the State Agency Physician, as more credible than Cantrell's own allegations, by noting that the agency opinion was supported by objective medical evidence in the record. (Tr. 19-20). Specifically, the ALJ noted that Cantrell's imaging studies revealed "mild" changes; Cantrell "was having much less discomfort in his left hip" and that he was "able to return to full-duty work." (Tr. 19-20). Furthermore, the ALJ articulated that Cantrell's 2003 physical examination findings were "unremarkable;" Cantrell's 2001 physical examination findings "were within normal limits;" and progress notes from St. Joseph Health Center revealed "findings [that] were within normal limits." (Tr. 19-20).

The ALJ must build a logical and accurate bridge from the evidence to his conclusion. Zurwaski, at 887. Because the ALJ's credibility determination in this case is supported by a thorough discussion of the evidence, noting the ALJ's reasons for discounting Cantrell's allegations as inconsistent with the objective medical evidence, this Court concludes that the ALJ's determination was supported by substantial evidence.

With regard to Cantrell's argument that the ALJ "held [his] attempts to work against him," this Court notes that nowhere in the ALJ's opinion is such a scheme articulated. In addition, Cantrell fails to adequately explain how the ALJ improperly considered his work history; the only reference by the ALJ to Cantrell's work attempts was made concerning whether Cantrell had engaged in SGA, not with regard to his credibility. See Tr. 17-18. Furthermore, an ALJ may consider a claimant's work attempts in concluding that a claimant is not disabled, so long as that determination is an additional, rather the sole, means of doing so. Nance v. Sullivan,

955 F.2d 46 (7th Cir. 1992). Consequently, this Court finds that the ALJ did not improperly hold Cantrell's attempts to work against him.

> 3. The ALJ Properly Relied on the Grid Rules, Was Not Required to Obtain a Vocational Expert, and Considered a Closed Period of Benefits.
>
> a. Grid Rules and Vocational Expert

Cantrell additionally argues that the ALJ improperly relied upon the Medical-Vocational Guidelines ("Grid Rules") and, thus, erred in not consulting with a Vocational Expert ("VE"). To support his argument, Cantrell contends that an ALJ must consult a VE "[i]n cases where a non-exertional limitation might substantially reduce a range of work an individual can perform." Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994). Cantrell neglects to mention, however, that, in Luna, as well as in the present case, there was substantial evidence supporting the finding that the claimant's claimed non-exertional limitations had no significant impact on his ability to perform the full range of sedentary work. Id. Furthermore, the Luna Court found that "the ALJ properly discounted [the claimant's] subjective complaints of pain based upon the medical evidence and [the claimant's] own testimony, and such credibility determination is entitled to considerable weight." Id. at 692.

Essentially, Cantrell's argument depends on whether the ALJ made an appropriate RFC finding. Because this Court has already determined that the ALJ's RFC finding was complete and was supported by substantial evidence, this Court finds the ALJ's reliance on the Grid Rules to be reasonable.

> b. Closed Period of Benefits

Cantrell also maintains generally that the ALJ did not provide a full and fair hearing because the ALJ did not discuss a closed period of benefits in his decision and thus denied Cantrell due process of the law. "The Social Security Act requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits is denied." White v. Barnhart, 235 F.Supp.2d 820, 826 (N.D. Ill. 2002) (internal citation omitted). At the hearing, the ALJ discussed the possibility of finding a closed period of benefits numerous times, providing that Cantrell would first need to produce evidence of monthly earnings from his employers and medical treatment records indicating a disability during 2002 and 2003. See Tr. 270-71. Cantrell subsequently produced such evidence after the hearing in the form of Exhibits 14F-16F. The fact that ALJ considered each of these new pieces of evidence is evident from his opinion, where he cites to each of them in turn. (Tr. 18-20). Because Cantrell was given sufficient opportunity to be heard, regarding a closed period of benefits, both in the oral hearing and by means of submitting evidence afterward, this Court finds that he was afforded a full and fair hearing.

### III. CONCLUSION

For the aforementioned reasons, this Court concludes that the ALJ's findings were supported by substantial evidence. Consequently, Cantrell's motion for remand is **DENIED**. [Doc. No. 1]. As such, this Court now **AFFIRMS** the Commissioner's decision pursuant to sentence four (4) of 42 U.S.C. § 405(g). The clerk is instructed to term the case and enter judgment in favor of the SSA.

**SO ORDERED.**

Dated this 23rd Day of March, 2009.

                                        S/Christopher A. Nuechterlein
                                        Christopher A. Nuechterlein
                                        United States Magistrate Judge